UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

**Chris Holden**
**Drew Lulow**
**Samuel Schmucker**

**On behalf of Themselves and**
**all others similarly situated,**

      **Plaintiffs**     Case No. __23-CV-461__

  **v.**

**Arbor Green, Inc.**
**Christy Wade**

      **Defendants.**

---

## COMPLAINT
---

Plaintiffs, by their attorneys, for their Complaint against Defendants state as follows:

1. This is an individual and collective action under the Fair Labor Standards Act against both defendants, as well as an individual and class action under Wis. Stat. §103.02 and §109.03(1) and (5) against Defendant Arbor Green Inc., to recover on behalf of the Named Plaintiffs and all other similarly situated Arbor Green employees (a) additional overtime pay for hours worked over 40 per week that they should have but did not receive; (b) pay for time spent riding from the shop to the jobsite after loading trucks in the shop; and (c) pay for time spent driving trucks from the last jobsite to the overnight storage location designated by Arbor Green.

### JURISDICTION AND VENUE

2. This court has subject matter jurisdiction over this lawsuit under 29 USC §216(b) and 28 U.S.C. §1331 because Plaintiff alleges violations of the FLSA, 29 U.S.C. §201 et seq; as well as supplemental jurisdiction over the Plaintiff's claims that arise under Wisconsin law, which

1

are based on the same nucleus of operative facts related to the nature of loading, driving, and riding duties employees performed during their workdays; as well as Arbor Green's uniform policies governing how to determine hours worked, and how to compute overtime pay.

3.  This Court has personal jurisdiction over Defendants pursuant to Rule 4(k)(1)(a) of the Federal Rules of Civil Procedure because they are subject to the jurisdiction of a court of general jurisdiction in the State of Wisconsin, while the Western District of Wisconsin is located within Wisconsin.

4.  Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because Defendants reside in this district, while a substantial portion of the events that give rise to the Named Plaintiffs' claims arose in this district.

## THE PARTIES

5.  Named Plaintiffs Chris Holden, Drew Lulow, and Samuel Schmucker are laborers employed by Arbor Green to perform work on construction jobsites and at the company shop. Because all three Named Plaintiffs hold the appropriate commercial drivers' licenses, they are also sometimes employed to drive Arbor Green's trucks. All three Named Plaintiffs' FLSA consent forms are being filed with the Court at the same time as this Complaint.

6.  Defendant Arbor Green is a Wisconsin construction company with a principal place of business, which includes a company yard, in Portage, Wisconsin. At any given time, Arbor Green employs multiple crews of laborers and operators, and would send the crews to perform work on construction jobsites throughout Wisconsin. During the time period on and after July 10, 2020, Arbor Green has neither performed, or submitted any bids to perform work at any jobsites that are located outside the State of Wisconsin.

7.  Defendant Christy Wade is one of the shareholders of, and the registered agent of Arbor Green. At all times between July 10, 2020 to the present, Wade has been responsible for

both designing and overseeing the implementation of each of the timekeeping and overtime computation policies that are at issue in this lawsuit; and more generally for hiring, firing, and determining the terms and conditions of employment for Arbor Green's hourly paid employees.

8. Arbor Green is an employer within the meaning of Wis. Stat. §109.03(1). At all relevant times between August of 2019 to the present, Arbor Green has had annual gross volume of sales of not less than $500,000.

**FACTS**

9. At the beginning of the vast majority of their workdays, Arbor Green would require Plaintiffs to, and Plaintiffs would report to the company shop located at Portage, Wisconsin.

10. Plaintiffs worked as members of crews that performed their day to day work with the assistance of one or more trucks owned by and assigned by Arbor Green.

11. Upon reporting to Arbor Green's Portage Shop, the crew foreman would notify Plaintiffs of a list of items that needed to be loaded onto their crews' trucks, which consists of materials, supplies, and equipment that the foreman anticipated would be needed by the crew throughout their day's work.

12. Because the trucks would contain left-over materials, supplies, and equipment for the previous day's work, Plaintiffs would first need to remove from the truck materials, supplies, and equipment that they did not need for the day's work before they would retrieve and place onto the trucks materials and supplies that they needed for the day's work. All members of the crew would then tie down all materials, supplies, and equipment onto the truck bed.

13. During the vast majority of their workdays Plaintiffs must report to the company shop to find out which project they would start the day by working on.

14. Arbor Green paid each member of each crew for their time spent loading to load their crews' trucks in the morning; but at a rate substantially lower than the rate that they would receive when they worked on jobsites.

15. After the truck is loaded, either the crew foreman or a crew member then drive the truck from the shop to the first jobsite for the day. If a crew member made the drive, he would receive for his driving time hourly pay at a rate equal to the rate he would receive for performing work on jobsites.

16. Pursuant to Arbor Green's uniform policy, employees are not paid for their time riding in a truck from the shop to the first jobsite for the day, after they had helped out with loading the crew's trucks in the shop. However, employees are paid, at the rates they would receive for performing work on jobsites, for their riding time from jobsite to jobsite.

17. At the end of each workday, Arbor Green would instruct each employee, who drove a truck throughout the day, whether the truck that he or she is responsible for should be delivered back to the shop or should be delivered to another location such as a park and ride. Arbor Green would decide on the overnight storage location for its truck for its convenience, based on the type and nature of work its crew would perform the next day.

18. Pursuant to Arbor Green's uniform policy, compensable time for all crew members including drivers ends when they stop working on their last jobsite for the day, so that drivers are not paid for their time spent driving the truck from the last jobsite for the day to the overnight truck storage location that Arbor Green designated.

19. Arbor Green paid differently hourly wage rates to its employees depending on the location of the jobsites that they worked at; and paid to its employees a rate for their work in the shop that equals about one third of their hourly rate when they worked at the jobsites.

4

20. Arbor Green paid all overtime pay at a rate equal to time and a half of the rate for specific types of work, rather than at a rate equal to time and a half the average straight time wage rate earned by the employee during the workweek.

21. Arbor Green paid some daily overtime pay to its employees whenever they worked more than 10 hours per day.

22. When an employee performed compensable work in the shop in the morning, and then worked more than 10 hours total for the day, and provided that the employee has not already worked more than 40 hours for the week, Arbor Green would pay the shop work performed in the morning at overtime rates, so that jobsite work performed by the employee after he had already worked 10 hours per the day can be paid at straight time rates.

23. When Plaintiffs were credited by Arbor Green as having worked more than 40 hours per week, they would always receive pay at their straight time rates for 40 hours worked per week. Because Plaintiffs are receiving overtime pay for their shop work performed during the first 10 hours per day and 40 hours per week, they must be receiving straight time pay for some of their hours worked over 40 during the week.

24. All three Plaintiffs would have received more overtime pay, had Arbor Green either computed it using the average straight time wage that they earned during each workweek; or had they received overtime pay for hours worked over 10 per day or 40 per week equal to the number of hours that they worked over 40 during the same week.

25. All three Plaintiffs would have received more overtime pay had Arbor Green counted their driving time from the final jobsite for the day to the overnight storage location for the trucks as hours worked.

5

26. Plaintiffs Lulow and Schmucker would have received more overtime pay, had Arbor Green counted as hours worked their riding time from the shop to the first jobsite for the day after they performed compensated work in the shop; while upon information and belief Plaintiff Holden always drove to and from jobsites.

## COLLECTIVE ACTION ALLEGATIONS

27. Plaintiffs brings their First Claim for Relief, pursuant to the Fair Labor Standards Act, on their own behalf and on behalf of all other similarly situated hourly employees of Arbor Green who, just like them, were subject to Defendants' uniform policies that (a) paid some shop work performed at the beginning of the day, and before the employee has worked 40 hours for the week at overtime rates; and paid employees straight time pay for an equal number of hours that he worked after he had worked 40 hours for the week; (b) did not pay for the employees' riding time from the shop to the first jobsite for the day, after they had performed the work of loading trucks in the shop; and (c) did not pay for the employees' time spent driving company trucks from the last jobsite for the day to the overnight truck storage location designated by Arbor Green.

28. FLSA certification is appropriate when the Court can uniformly decide Defendants' liability to each collective member by deciding whether Defendants forfeited their right to use the rate for the type of work method to compute its employees' overtime pay; whether the employees' work in the shop commenced their compensable workday so that their subsequent riding time to the first jobsite for the day was compensable; and whether the delivery of trucks from the last jobsite for the day to the overnight storage location was compensable.

29. The First Claim for Relief for violations of the FLSA therefore may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of FLSA, 29 U.S.C. §216(b), for prospective members of the FLSA Class that are similarly situated to Plaintiff.

**CLASS ALLEGATIONS**

30. Plaintiff seeks to represent the following classes pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All hourly employees employed by Defendant Arbor Green who during the time period of June 10, 2021 to the present either (a) was paid for time spent performing work in the shop in the morning; (b) rode rather than drove to the jobsite after performing compensable work in the shop in the morning; or (c) drove company trucks.

31. The persons in the class identified above are so numerous that joinder of all members is impracticable. Upon information and belief, Arbor Green has paid approximately 70 employees for working in the shop during the last two years, and given that most qualified drivers would take turns driving and riding the company trucks, there are at least 70 members of proposed subclasses (a) and (b). Additionally, a sufficient number of employees have performed driving work for Arbor Green during the past two years so that, after taking into account the geographical dispersion of former employees, the difficulty of joining current employees, and the impossibility of joining future employees to obtain the injunctive relief sought by the Complaint, renders the joinder of all drivers in this lawsuit impracticable.

32. There are questions of law and fact common to the Wisconsin Unpaid Wage Class (Rule 23 Class) that predominate over any questions solely affecting individual members of the class including whether Arbor Green was eligible to use the rate for the type of work method to compute its employees' overtime pay, whether employees' riding time after performing compensated work in the shop is compensable, whether the employees' time spent driving company trucks from the last jobsite for the day to the overnight storage location designated by Arbor Green is compensable; and whether under Wisconsin law employees are entitled to full straight time pay plus overtime pay for each of their work hours.

33. Plaintiffs' claims are typical of those of the Class in that they, just like each member of the proposed subclasses, did not receive overtime pay for hours worked over 40 per week because Arbor Green claimed a credit for hours of overtime paid to them for shop work that was performed during the first 10 hours per day and 40 hours per week, did not receive pay for time spent riding from the shop to the jobsite after performing work in the shop; and did not receive pay for driving a company truck from the last jobsite for the day to the storage location.

34. Named Plaintiffs will fairly and adequately protect the interests of the Rule 23 class; and have retained counsel experienced in wage and hour litigation related to overtime pay and training time. There is also no antagonism between Named Plaintiffs and other class members in that Arbor Green can modify its employee compensation policies to avoid future liability while also paying wages that it owes to its current and past employees.

35. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Damages sustained by class members pale in comparison to the costs of litigating their individual claims; while damages can be computed by applying uniform formulas to Arbor Green's own time and payroll records. Litigation on a class wide basis is also superior because it will permit the Court to resolve predominate legal questions that drive the resolution of this litigation, while obviating the need for unduly duplicative litigation that might result in inconsistent judgments about the applicability and interpretation of the relevant laws.

**COUNT I.    CLAIM FOR UNPAID MINIMUM WAGE AND OVERTIME PAY UNDER THE FLSA.**

36. Plaintiffs re-allege, and incorporates by reference, the allegations contained in paragraphs 1-35 of the Complaint.

37. The Fair Labor Standards Act authorizes two possible methods for computing employees' overtime pay: Overtime pay equal to time and a half the regular rate of pay authorized

by §207(a)(1); and overtime pay equal to time and a half the bona fide rate for the same work when performed during non-overtime hours authorized by §207(g)(2).

38. Under 29 U.S.C. §207(e)(5) and §207(h)(2) and DWD §778.421, only hours worked over 8 per day for which overtime was paid can be used to offset hours worked over 40 per week, for which the employee only received straight time pay. Hours spent performing shop work at the beginning of each workday, for which the employee received overtime pay, therefore cannot offset the number of hours over 40, for which the employee is entitled to overtime pay.

39. The agreement or understanding between Arbor Green and its employees does not comply with §207(g)(2) of the FLSA because, even after taking into account offsets for hours worked over 8 per day for which the employee received overtime pay, Arbor Green employees are receiving straight time pay rather than legally required overtime pay for some of their hours worked over 40 per week.

40. Because Arbor Green does not have a valid agreement or understanding with its employees to utilize the §207(g)(2) method to compute its employees' overtime pay, it must instead compute overtime premium pay as ½ of the regular rate for each of its employees' hours worked over 40 per week.

41. The entire amount that Arbor Green paid to its employees for their shop work performed during the first 10 hours per day and first 40 hours per week do not qualify for exemption under §§207(e)(5) through (7), because they are paid for the first hours worked each day rather than hours worked over 8 each day, so that the entire amount of such shop work pay including any purported overtime premiums must be included in computing the employees' weekly regular rates.

42. Alternatively, even if Arbor Green can utilize the §207(g)(2) method to compute its employees' overtime pay, Plaintiffs are entitled to overtime pay equal to time and a half the rate for the type of work performed for each hour worked over 40 per week, which cannot be offset by an hour worked over 8 per day for which the employee received daily overtime pay.

43. Because Plaintiffs are loading onto trucks the equipment and supplies that they need for the day's work, and because no one else is available to perform the loading work, the work of loading trucks that Plaintiffs performed at the beginning of their shifts is integral and indispensable to the principal jobsite work that they performed throughout their workdays.

44. Because Plaintiffs' work at the shop started their workdays, the compensability of their subsequent riding time from the shop to the jobsite is governed by the Fair Labor Standards Act rather than by the Portal-to-Portal Act. Plaintiffs' riding time from the shop to the jobsite after they had performed the principal activity of loading trucks must count as hours worked under 29 C.F.R. §785.38.

45. At the end of the day, by driving the truck from the last jobsite to the overnight storage location designated by Arbor Green, Plaintiffs positioned the truck so that Arbor Green could setup and commence the next day's work for the same crew as smoothly as possible. Plaintiffs therefor performed work that is integral and indispensable to their principal jobsite work, by moving the truck from the last jobsite for the day to the overnight storage location designated by Arbor Green. The driving time therefore must count as hours worked.

46. Plaintiffs therefore are entitled to all additional overtime pay they would have received, had Arbor Green counted their riding time and driving time as hours worked, and computed their overtime pay in a manner that complied with the FLSA.

47. Defendant Wade should be held jointly and severally liable for all wages that Arbor Green owes to Plaintiffs since she, by promulgating and overseeing the enforcement of timekeeping and overtime computation policies that caused Plaintiffs' FLSA injuries; and by more generally overseeing the hiring, firing, and terms and conditions of Plaintiffs' employment, became the Plaintiffs' FLSA employer.

48. Because Defendants do not have any legitimate justifications for their violations of the FLSA, Plaintiffs are entitled to 100% liquidated damages on all overtime wages owed to them.

49. Because Defendants were generally aware of its obligations to both count hours worked away from the jobsite as hours worked, and to pay overtime pay for its employees' hours worked over 40 per week, yet failed to investigate how the FLSA applies to its timekeeping and overtime compensation procedures, Plaintiffs are entitled to the application of a three years statute of limitations for willful violations.

50. Plaintiffs are also entitled to their reasonable attorneys' fees incurred in prosecuting this first cause of action.

**COUNT II: CLAIM FOR UNPAID WAGES BROUGHT PURSUANT TO §109.03(5).**

51. Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1-50 of the Complaint.

52. Under Wisconsin law, overtime pay must be computed as time and a half the regular rate of pay. See DWD §274.03.

53. Alternatively, under DWD §274.03 overtime pay must be paid on all hours worked over 40 per week; while no provision of Wisconsin law authorizes an employer to use overtime premiums paid to its employees for their first 10 hours worked per day and 40 hours worked per week to offset overtime premium pay owed to them.

54. When Plaintiffs are required to report to the shop to help load their crews' trucks, their subsequent riding time from the shop to the first jobsite for the day must count as hours worked under DWD §272.12(2)(g)5.

55. Plaintiffs were working while driving, while they were complying with Arbor Green's direction to transport their trucks from the last jobsite for the day to the overnight storage location designated by Arbor Green; so that such driving time must count as hours worked under DWD §272.12(2)(g)8.

56. Under Wis. Stat. §103.02, employers are required to pay to their employees full straight time wages rather than just minimum wages for their straight time hours worked. Because Plaintiffs received pay at jobsite rates when they drove from the shop to the first jobsite, as well as when they rode between jobsites, Plaintiffs are also entitled to recover pay at the applicable jobsite rates for their riding time and driving time that Arbor Green should have but failed to count as hours worked.

57. Because Wisconsin law requires the payment of full wages rather than minimum wages for each of the employees' hours worked, Plaintiffs are entitled to overtime pay equal to time and a half the regular rate, rather than only overtime premium pay equal to ½ of the regular rate, for each of their overtime hours worked.

58. By failing to pay to Plaintiffs all straight time and overtime wages required by Wisconsin statutes and the Wisconsin Administrative Code within 31 days of when the wages were earned, Arbor Green violated Wis. Stat. §109.03(1), so that Plaintiffs may maintain suit against Arbor Green under Wis. Stat. §109.03(5) to recover all wages owed to them.

59. Plaintiffs are entitled to recover, in addition to straight time and overtime wages owed to them, 50% of said owed overtime wages as liquidated damages, plus their reasonable costs including actual attorneys' fees incurred in prosecuting their claims against Arbor Green.

WHEREFORE, Plaintiffs respectfully request the Court to enter an order that:

a. Finds that Arbor Green and Wade are jointly and severally liable to them, along with all persons who timely join the collective action, all overtime wages owed to them under the FLSA, plus an equal amount as liquidated damages, plus their actual market value attorneys' fees and costs incurred in prosecuting this claim;

b. Finds that Arbor Green is liable to them, along with all persons who do not timely exclude themselves from the proposed class action, all straight time and overtime wages owed to them under Wisconsin law, plus 50 percent of the owed wages as liquidated damages, plus their actual market value attorneys' fees and costs incurred in prosecuting this claim;

c. Enjoins Arbor Green and Wade from continuing to (1) pay employees at straight time rates for 40 hours worked per week, plus pay overtime rates for shop work performed by employees during the first 10 hours per day and 40 hours per week; (2) fail to pay employees for their riding time from the shop to the jobsite after performing work at the shop; and (3) fail to pay employees for their driving time from the last jobsite for the day to the overnight truck storage location designated by Arbor Green; and

d. Grants to them such further relief as the Court deems just and proper.

Dated this 11th day of July, 2023.

        /s/Yingtao Ho_____
        Yingtao Ho
        Email: yh@previant.com
        Attorney for Plaintiffst
        The Previant Law Firm S.C.
        310 W. Wisconsin Avenue, Suite 100MW
        Milwaukee, WI   53203
        Telephone: 414-271-4500
        Fax: 414-271-6308