IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRIS HOLDEN, DREW LULOW
and SAMUEL SCHMUCKER,
on behalf of themselves and all others similarly situated,

                  Plaintiffs,            OPINION AND ORDER

  v.
                                                        23-cv-461-wmc

ARBOR GREEN, INC. and CHRISTY WADE,

                  Defendants.

---

Plaintiffs Chris Holden, Drew Lulow, and Samuel Schmucker claim that defendants failed to pay them at proper wage rates while employees of defendant Arbor Green, Inc., in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Wisconsin state law. Defendants now move to dismiss plaintiffs' state-law claims, asserting that this court lacks jurisdiction to consider those claims to the extent preempted by § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and plaintiffs did not exhaust the grievance procedure under their collective bargaining agreement. The court will deny defendants' motion as premature at this early stage of the litigation. For the same reasons, the court will also deny defendants' separate motion to stay this case pending resolution of a union grievance. Finally, the court will deny plaintiffs' motion to strike defendants' reply brief in support of their motion to stay and grant defendants' motion for leave to file a reply brief.

ALLEGATIONS OF FACT[1]

A. The Complaint's Allegations

Plaintiffs Holden, Lulow, and Schmucker are employees of defendant Arbor Green, a Wisconsin-based construction company. Defendant Christy Wade is the registered agent of Arbor Green. Plaintiffs allege individual and collective actions under the FLSA and individual and class actions under Wis. Stat. §§ 103.02 (hours of labor), 109.03(1) and (5) (providing employees a right of action to recover wages due).

Arbor Green allegedly paid its employees a location-based "jobsite" rate and a "shop" rate that was about one-third the "jobsite" rate. At the beginning of most workdays, plaintiffs reported to Arbor Green's shop where they unloaded trucks from the previous day and reloaded the trucks with items needed for that day's work. Arbor Green paid employees for time spent loading trucks in the morning at the lower "shop" rate. After loading the trucks, employees rode together to the jobsites in the trucks. Arbor Green paid the drivers at the "jobsite" rate but did not pay the passengers at all for their ride time. At the end of the workday, Arbor Green instructed drivers to drop the trucks off at an overnight storage location but did not pay them for this return trip.

Next, Arbor Green allegedly paid overtime "at a rate equal to time and a half of the rate for specific types of work, rather than at a rate equal to time and a half the average straight time wage rate earned by the employee during the workweek." For example, when an employee worked more than ten hours in a day and some of those hours were in the

---

[1] The following allegations are drawn from plaintiffs' complaint (dkt. #1) and accepted as true for purposes of resolving defendants' pending motion to dismiss.

2

shop in the morning, Arbor Green would apply the overtime-time-and-a-half modifier to the "shop" rate, but not to the "jobsite" rate for work performed later in the day. Plaintiffs allege that they would have received more overtime pay had Arbor Green paid them: (1) the overtime rate using the "average straight time wage" or (2) at an overtime rate for hours actually worked beyond the usual 10 per day or 40 per week. Plaintiffs also assert that they would have received more overtime pay had Arbor Green counted their driving time from the final jobsite for the day to the overnight truck storage location. Plaintiffs Lulow and Schmucker also assert that they would have received more overtime pay had Arbor Green paid them for their riding time to the first jobsite.

Similarly, plaintiffs appear to allege three violations of Wisconsin's Department of Workforce Development ("DWD") regulations. First, defendants allegedly violated DWD § 274.03 by not calculating plaintiffs' overtime rate as time and a half of their "regular rate of pay." Second, defendants allegedly failed to pay plaintiffs for riding time from the shop to the first jobsite of the day in violation of DWD § 272.12(2)(g)5. Third, defendants allegedly did not pay plaintiffs for driving company trucks back to overnight storage locations in violation of DWD § 272.12(2)(g)8. Relatedly, plaintiffs allege that Wisconsin law also entitles them to recover pay at the applicable jobsite rates for their riding and driving time that Arbor Green should have, but did not, count as hours worked and overtime pay at one-and-one-half times the normal rate.

For all of these violations, plaintiffs seek back pay and injunctive relief.

3

### B. The Collective Bargaining Agreement

In support of their motion to dismiss, defendants attach a collective bargaining agreement ("CBA") between the Wisconsin Transportation Employers' Council and various unions. (Dkt. #11-1.) Each of the plaintiffs belonged to a union that was party to the CBA. (Dkt. #11-2.) The CBA covered all "highway and heavy construction work" under contracts awarded by the Wisconsin Department of Transportation. (Dkt. #11-1, at 3.) Article VI of the CBA set forth the grievance and arbitration procedures for covered parties, explaining that grievances are initially submitted to the Wisconsin Employment Relations Commission ("Commission"), and if the Commission is unable to resolve the grievance, that grievance must be submitted to final and binding arbitration. (*Id.* at 8-9.) Article IV defined this "jurisdictional" work (i.e., work under the unions' jurisdiction) as including, among other activities, "unloading/loading materials" for heavy and highway construction. (*Id.* at 4, 7.) Article IX of the CBA also addressed overtime, explaining that "[a]ny time worked in excess of eight (8) hours per day shall be paid at a rate of one and one-half times," unless with union agreement, laborers work 10 hours per day, 4 days a week, in which case any time worked beyond 10 hours per day is paid at an overtime rate. (*Id.* at 12.) Finally, Article XI of the CBA listed the pay rates based on type of work and location. (*Id.* at 14-20.)

### OPINION

Defendants move to dismiss plaintiffs' state-law claims under Rule 12(b)(1), asserting that their state-law claims are preempted by section 301 of the LMRA and unexhausted. Defendants also move to stay the case pending resolution of the union

grievance, as well as this court's motion to dismiss. Plaintiffs further move to strike defendants' reply brief in support of their motion to stay, while defendants move for leave to file that brief. The court will grant defendants' motion for leave to file a reply brief in support of their motion to stay and deny plaintiffs' motion to strike that brief. The court addresses the remaining motions in turn below.

**I. Motion to Dismiss**

    **A. Subject Matter Jurisdiction**

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. *Long v. Shorebank Development Corp.,* 182 F.3d 548, 554 (7th Cir. 1999). Defendants move for dismissal of plaintiffs' wage claims under Wisconsin law for lack of subject matter jurisdiction under Rule 12(b)(1), asserting that the claims are "preempted by Section 301 of the [LMRA] and [p]laintiffs have failed to exhaust the grievance procedure prior to filing suit." (Defs.' Br. (dkt. #8) 1-2.)

Section 301(a) of the LMRA states: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Further, the U.S. Supreme Court has held state-law claims *based on CBA terms* are completely preempted because "[t]he subject matter of § 301(a) is peculiarly one that calls for uniform law" to avoid "[t]he possibility that individual contract terms might have different meanings under state and federal law," which "would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210

5

(1985) (quotation marks omitted).  Thus, a state law claim "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract . . . must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor-contract law." *Id.* at 220.  However, even if the LMRA ultimately preempts plaintiffs' state-law claims here, § 301(a) "[b]y its terms, . . . confers federal subject-matter jurisdiction . . . over suits for violation of [CBAs]." *Textron Lycoming Reciprocating Engine Div., AVCO Corp. v. UAW & Its Local 787*, 523 U.S. 653, 656, 661-62 (1998) (quotation marks omitted); *see also* 28 U.S.C. § 1331; 29 U.S.C. § 185(a).

Moreover, while some district courts have addressed LMRA preemption as a jurisdictional issue under Rule 12(b)(1), the FLSA claim alleged here provides this court an independent basis to assert federal question jurisdiction, making this case distinguishable from many of the cases addressing LMRA preemption under Rule 12(b)(1). *See Meatheney v. Arts Performing Ctr.*, LLC, No. 21-CV-683, 2022 WL 912144, at *5 (E.D. Wis. Mar. 29, 2022) ("The FLSA is a federal statute providing a federal cause of action, so the Court has subject-matter jurisdiction under 28 U.S.C. § 1331." (quotation marks omitted)); *Carcillo v. Nat'l Hockey League*, 529 F. Supp. 3d 768, 776-77 (N.D. Ill. 2021) (addressing defendant's argument that the LMRA provided a basis for federal jurisdiction); *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 799, 803 (7th Cir. 2013) (observing in a case involving state-law claims with non-diverse parties that, "[w]ithout Section 301 'complete preemption,' there is no basis for federal subject-matter jurisdiction over this case"); *but see Anderson v. JCG Indus., Inc.*, No. 09 C 1733, 2009 WL 3713130 *2-7(N.D. Ill. Nov. 4, 2009) (appearing to address LMRA preemption under Rule 12(b)(1) even though there was another federal claim).  Accordingly, if brought at all, defendants' motion is likely more

properly brought under Rule 12(b)(6).[2]  *See Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 840 (7th Cir. 2015) (deeming "a dismissal of preempted state law claims [under the LMRA], a 12(b)(6) dismissal for failure to state a claim, a dismissal on the merits"); *but see Miller v. Sw. Airlines Co.*, 926 F.3d 898, 901 (7th Cir. 2019) (dismissal of claim preempted by the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, which as explained below, has the same preemption standards as the LMRA should be "labeled either as a judgment on the pleadings, Fed. R. Civ. P. 12(c), or a dismissal for lack of subject-matter jurisdiction").

### B. Defendants' LMRA Preemption Motion is Premature

Regardless of whether defendants' motion was properly brought under Rule 12(b)(1) or Rule 12(b)(6), the motion is still premature at best.  Indeed, there is presently no dispute before the court as to the meaning of terms of the CBA.  Instead, defendants assert that plaintiffs' state-law wage claims are *preempted* by the LMRA because those claims are inextricably intertwined with the CBA.  Specifically, defendants contend that the court would have to interpret "jurisdictional work" and Articles IV, IX, and XI of the CBA to determine whether plaintiffs were entitled to overtime pay and their pay rate, making plaintiffs' state-law claims preempted. (Defs.' Br. (dkt #8) (citing *In re Bentz Metal Prod. Co., Inc.*, 253 F.3d 283 (7th Cir. 2001) ("If the entitlement to wages (or other employee

---

[2] Notably, it does not appear that the court can properly consider the CBA at the Rule 12(b)(6) stage, as it was not even *referred* to in the complaint. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013) (court can consider documents attached to a motion to dismiss if they are "referred to in the plaintiff's complaint and are central to his claim").  As discussed below, plaintiffs may have artfully drafted their complaint to avoid mentioning the CBA.  However, even considering the CBA, defendants' motion is premature for the reasons discussed above.

7

pay) or the amount due were at issue, the CBA would control . . . [so] preemption would apply").)

Plaintiffs respond that the court need not interpret the CBA to resolve its state-law claims because the court could determine plaintiffs' "regular rate" by averaging their hourly pay. Alternatively, plaintiffs assert that, even if it was necessary to interpret the CBA, the parties have not yet "staked out" competing interpretations of it.[3] Said another way, assessing complete preemption under Section 301 will require this court to look beyond the face of the complaint and "evaluate the *substance* of plaintiff's claims." *Crosby*, 725 F.3d at 800 (quotation marks omitted). Although Section 301 broadly preempts many state-law theories, it does not extend to every state law that "may have some connection to a CBA." *Id.* The key inquiry is whether a state-law claim is "inextricably intertwined with consideration of the terms of the labor contract." *Id.* (quotation marks omitted). A claim is inextricably intertwined with a CBA where an element of the claim "requires a court to interpret any term of" the CBA. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988).

In *Wisconsin Central v. Shannon*, 539 F.3d 751 (7th Cir. 2008), an employer sought declaratory judgment that the Railway Labor Act[4] and applicable CBAs in that case would preempt its employees from enforcing the overtime provisions of Illinois law. *Id.* at 755-

---

[3] Plaintiffs also argue that the court need not interpret the CBA at all, since "[t]o compute the regular rate the Court must only take notice of whether [the union] grievance recovered additional wages for hours worked by employees in the shop." (Pls.' Resp. Br. (dkt. #13) 14.) However, that argument is less persuasive, as the outcome of the union grievance obviously depends on an application of the CBA's terms.

[4] The preemption provision in the Railway Labor Act is substantially identical to § 301 of the LMRA, and precedent interpreting one is applicable when interpreting the other. *See Hawaiian Airlines v. Norris*, 512 U.S. 246, 260, 263-64 (1994).

56. The relevant CBAs provided terms for calculation of wage rates and hours. *Id.* at 758 & n.3. Accordingly, the district court found for the employer, "reasoning that determining whether [the employer] had violated [Illinois law] would require interpreting the applicable CBAs." *Id.* at 756. However, the Seventh Circuit reversed, holding that the district court lacked jurisdiction because the claim was not ripe for adjudication. *Id.* at 761. More specifically, the Seventh Circuit explained that the district court had "incorrectly" relied on *In re Bentz*, emphasizing that for an entitlement to wages or the amount due to be "at issue" -- and therefore, for preemption to apply -- there must be an actual dispute between the parties as to the interpretation of the relevant terms of the CBA. *Id.* at 760. For example, § 301 preemption would not apply where: "(1) the particular contractual provision is so clear as to preclude all possible dispute over its meaning; (2) the parties do not dispute the interpretation of the relevant CBA provisions; or (3) reference to the CBA is only necessary for computing damages." *Id.* at 758 (quotation marks and citations omitted).

Defendants' argument here appears to be quite similar to the argument that the Seventh Circuit rejected in *Wisconsin Central*: defendants purport to dispute plaintiffs' allegation that they must be paid at the CBA rate for time spent loading materials at the beginning of the day, as well as for travel time to the first jobsite of the day and from the last jobsite of the day. While this case presents a live dispute and is ripe for adjudication, the reasoning in *Wisconsin Central* also applies here. At the outset, the court is suspicious of plaintiffs' claim that the court need not interpret the CBA to resolve their claims, especially having artfully pleaded to avoid mentioning the CBA. *Marcus v. UPS*, No. 5:14-CV-01625, 2014 WL 3421552, at *3 (N.D. Cal. July 14, 2014) (absence of references to

the CBA in the complaint, when claims clearly asserted rights created by the CBA, only showed a "conscious attempt to artfully plead around it").

Still, neither side's position is very well defined: the complaint does not mention the CBA, and plaintiffs assert interpreting the CBA is unnecessary altogether, while defendants only briefly and superficially address their disagreement with plaintiffs' position on the rate of pay for loading materials and travel, but fail to identify any *material* dispute over the meaning of the CBA provisions that would affect the merits of the parties' claims. Likely, all of this can be flushed out at summary judgment, but defendants' motion to dismiss plaintiffs' state-law claims as preempted is simply premature at this stage. *See Chavez v. Don Stoltzner Mason Contractor, Inc.*, No. 10 C 264, 2010 WL 1417029, at *4 (N.D. Ill. Apr. 5, 2010) (concluding that it was too early to determine if a dispute existed because the parties had not taken positions on the meaning of relevant CBA provisions). Because the court has concluded that it is premature to determine that the LMRA preempts plaintiffs' state-law claims, it is likewise premature for the court to conclude that plaintiffs cannot maintain an action under § 301 due to their asserted failure to exhaust. *See Williams*, No. 19-CV-8198, 2020 WL 5702294, at *4 ("to treat a claim as a § 301 claim, the plaintiff must first exhaust administrative remedies."). Of course, as this lawsuit progresses, it *may* become more obvious that plaintiffs' state-law claims are dependent upon interpreting the terms of the parties' CBA. Should that become clear, defendants are free to raise the issues of LMRA preemption and exhaustion again.

**II. Motions to Strike and Stay**

Finally, defendants move to stay this action pending resolution of the union grievance and their motion to dismiss in this court, asserting that a stay is appropriate because: (1) this lawsuit is at an early stage; (2) deciding plaintiffs' claims requires interpreting the CBA; (3) resolution of the grievance will determine the proper interpretation of key CBA provisions; (4) a stay would prevent defendants from enduring duplicative discovery; and (5) the grievance is likely to be resolved within one year. Plaintiffs respond that a stay would prejudice them by delaying conditional certification, recovery of unpaid wages, and injunctive relief. They add that granting a stay will neither simplify nor resolve this action because the grievance deals with different claims, although they acknowledge that the outcome of the union grievance *could* impact the damages determination in this case.

While this court must exercise discretion before staying proceedings pending the resolution of other suits, *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010), considerations include whether: (1) the litigation is at an early stage; (2) a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) a stay will simplify the issues and streamline the trial; and (4) a stay will reduce the burden of litigation on the parties and on the court. *Id.* The case is still at an early stage, but other factors cut against staying the case pending resolution of the union grievance. For one, defendants seek to stay the case indefinitely while the union grievance is pending; however, the grievance apparently has no hard deadline for resolution, as the parties suggest that it *might* be resolved within a year. *Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413,

1416 (Fed. Cir. 1997) ("A stay so extensive that it is 'immoderate or indefinite' may be an abuse of discretion.").

Moreover, it is uncertain whether resolution of the union's grievance will actually simplify the issues or streamline the dispute before this court. As explained above, the degree to which the grievance and this lawsuit are intertwined has yet to be determined, and even if there was overlap between the union's and plaintiffs' claims, defendants cite no authority for their implicit assumption that the Commission's interpretation of the CBA in the grievance process would be binding on this court. At this point then, the court will deny defendants' motion to stay the case pending resolution of the union grievance and deny as moot their motion for a stay pending this court's decision on their motion to dismiss.

## ORDER

IT IS ORDERED that:

1) Defendants' motion to dismiss Count Two of the complaint is DENIED. (Dkt. #7.)

2) Plaintiffs' motion to strike defendants' reply brief is DENIED and defendants' motion for leave to file a reply brief is GRANTED. (Dkt. #25 and Dkt. #26.)

3) Defendants' motion to stay the proceedings is DENIED. (Dkt. #18.)

Entered this 8th day of May, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge