IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRIS HOLDEN, DREU LULOW
and SAMUEL SCHMUCKER,
on behalf of themselves and all others similarly situated,

                                      Plaintiffs,[1]                  OPINION AND ORDER

   v.

                                                                                      23-cv-461-wmc

ARBOR GREEN, INC. and CHRISTY WADE,

                                      Defendants.

---

In this putative class and collective action, named plaintiffs Chris Holden, Dreu Lulow, and Samuel Schmucker contend that defendants Arbor Green, Inc. and Christy Wade violated the Fair Labor Standards Act of 1938 ("FLSA") and Wisconsin state law. Before the court is plaintiffs' motion for conditional certification of the FLSA collective action and authorization of notice to similarly situated persons. Subject to modification of the plaintiffs' proposed notice, the court will grant plaintiffs' motion for the reasons discussed below.

ALLEGATIONS OF FACT[2]

Plaintiffs Holden, Lulow, and Schmucker were employees of defendant Arbor Green, a Wisconsin-based construction company. Defendant Christy Wade is the

---

[1] Plaintiffs initially spelled Lulow's first name as "Drew," but they now spell it "Dreu." The court has updated the caption to reflect this change.

[2] When considering a motion for conditional certification, the court draws the relevant facts from the complaint and any affidavits that have been submitted. *Bitner v. Wyndham Vacation Resorts, Inc.*,

registered agent of Arbor Green. Plaintiffs allege individual and collective actions under the FLSA and individual and class actions under Wisconsin state law.

Arbor Green paid its employees a "shop" rate that was about one-third of its location-based "jobsite" rate. Specifically, at the beginning of most workdays, plaintiffs reported to Arbor Green's shop where they unloaded trucks from the previous day and reloaded the trucks with items needed for that day's work. Arbor Green paid employees for this time at the lower, shop rate. After loading the trucks, employees rode together to the jobsites in the trucks. While Arbor Green then paid employees assigned to drive the trucks at the jobsite rate for their time, it did not pay the other employees at all for their ride time. Upon arriving, these employees began being paid at the jobsite rate. Last, at the end of the workday, Arbor Green instructed the designated drivers to drop the trucks off at an overnight storage location but did not pay them for this return-trip time.

Next, the named plaintiffs allege that when an employee worked more than ten hours in a day with some of those hours in the shop in the morning, Arbor Green would apply an overtime-time-and-a-half modifier to the shop rate, rather than the jobsite rate for work performed after an employee had worked more than 10 hours. Relatedly, plaintiffs also allege that Arbor Green failed to pay an overtime rate for hours: (1) actually worked beyond the usual 40 per week; and (2) again, for driving times from the final jobsite for the day to the overnight truck storage location. Plaintiffs Lulow and Schmucker allege

---

301 F.R.D. 354, 357 (W.D. Wis. 2014). "Plaintiffs' materials are the proper focus at this preliminary stage, not defendants'," and any factual disputes are resolved in plaintiffs' favor. *Id.*

that they would have earned more overtime pay if Arbor Green had paid them for their riding time from the shop to the first jobsite.

Finally, plaintiffs allege that despite receiving yearly bonuses from 2021 to 2023 based on the number of hours worked, defendants failed to account for these annual bonuses in computing their regular, hourly rates.

OPINION

I. Two-Step Standard of Review

The FLSA provides that an employee may bring an action on behalf of himself and "other employees similarly situated." 29 U.S.C. § 216(b). "Although § 216(b) does not explicitly require the district court to certify a collective action under the FLSA, . . . the duty is implicit in the statute and the Federal Rules of Civil Procedure." *Spoerle v. Kraft Foods Glob., Inc.*, 253 F.R.D. 434, 438 (W.D. Wis. 2008).

A similarly situated employee must opt-in to participate in the proposed collective action. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Because of this requirement, "a representative plaintiff must be able to inform other individuals who may have similar claims that they may join his lawsuit." *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 605 (W.D. Wis. 2006). District courts have the discretion to facilitate and regulate this notification process. *Id.*

In light of both the court's implicit duty to certify a collective action and discretion to regulate notice to potential collective members, many courts, including this one, have

3

applied a two-step approach to certifying FLSA collective actions. *Id.* At step one, the court determines whether plaintiff has alleged sufficient facts to require notice to allegedly, similarly-situated employees. *Id.* To meet this burden, a plaintiff "need only make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Bitner*, 301 F.R.D. at 357 (quoting *Austin*, 232 F.R.D. at 605). If this burden is satisfied, then the court must conditionally certify a collective action and authorize notice to potential collective members. *Id.* At step two, a defendant may move the court for decertification of the conditional collective after the close of discovery. *Id.* The court then "determines whether the plaintiffs are *in fact* similarly situated to those who have opted in." *Id.* (emphasis original) (quoting *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 629 (W.D. Wis. 2009)).

For two reasons, defendants nevertheless argue that this court should abandon this two-step process and require plaintiffs to prove similarity by a preponderance of the evidence before approving a conditional collective action. (Dkt. #46, at 7-13.) *First*, defendants argue that a "shifting tide" in the case law justifies this court adopting a heightened standard for conditional certification requiring proof of "similarity by a preponderance of the evidence." (Defs.' Br. (dkt. #46) 12 (citing *Laverenz v. Pioneer Metal Finishing, LLC*, No. 22-C-692, 2024 WL 3887110, at *5, *9 (E.D. Wis. Aug. 21, 2024) (rejecting two-step certification process and requiring plaintiff moving for court-authorized notice to prove similarity by a preponderance of the evidence).) Defendants also cite to two other, out-of-circuit cases applying a heightened standard at the conditional certification stage for collective actions -- *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d

4

430 (5th Cir. 2021), and *Clark v. A&L Homecare & Training Center, LLC*, 68 F.4th 1003 (6th Cir. 2023) -- along with a Seventh Circuit case addressing class action certification under Fed. R. Civ. P. 23, *Jacks v. DirectSat USA, LLC*, 118 F.4th 888, 894 (7th Cir. 2024). However, absent a controlling Seventh Circuit case overruling the two-step approach adopted by most district courts in this circuit in deciding whether to conditionally certify collective actions, this court is disinclined to depart from its usual, two-step approach. *See Bitner*, 301 F.R.D. at 357 (conditional certification standard is "fairly lenient" and does not "entail the kind of rigorous analysis typical of class certification" (quotation marks omitted)).

*Second*, defendants assert that a heightened standard applies because plaintiffs have served four rounds of written discovery, responded to defendants' discovery requests and chosen not to take any depositions. (Defs. Br. (dkt. #46) 8-9.) This second reason for adopting a heightened standard in this case has considerably more force since the court has already recognized that such a standard may be appropriate "where sufficient discovery on the specific issue of whether the putative collective is similarly situated has occurred." *Morgan v. Crush City Constr., LLC*, No. 19-CV-27-WMC, 2020 WL 42717, at *3 (W.D. Wis. Jan. 3, 2020). However, in *Morgan*, the court further explained that the proper focus "is not on the quantity of discovery that has occurred in the case; rather, the focus is on plaintiff's opportunity to conduct discovery 'into the matters that are most useful to establishing conditional certification.'" *Id.* (quoting *Freeman v. Total Sec. Mgmt.-Wisconsin, LLC*, No. 12-cv-461-wmc, 2013 WL 4049542, at *4 (W.D. Wis. Aug. 9, 2013)). Similarly, in *Freeman*, the court noted that a heightened, intermediate standard may apply "when a

5

court has expressly allowed discovery on the issue of whether the plaintiffs are similarly situated' and the plaintiffs have been given access to a list of other . . . potential members of the proposed class." 2013 WL 4049542, at *4. Moreover, this court declined to apply an intermediate standard in *Freeman* because plaintiff had "not been permitted discovery into the matters that are most useful to establishing conditional certification -- access to a list of fellow employees at other locations." *Id.* In *Holmes v. Sid's Sealants, LLC*, No. 16-CV-821-WMC, 2017 WL 5749684 (W.D. Wis. Nov. 28, 2017), the court likewise declined to apply an intermediate standard because "requiring plaintiff's counsel to contact potential plaintiffs in order to achieve conditional certification of the collective action could undermine the standard certification notice period and raise problematic privilege and ethical concerns for plaintiff's counsel in contacting others about joining the suit." *Id*. at *3 n.2. By comparison, this court recognized that heightened scrutiny at the conditional certification stage was appropriate in *Boelk v. AT & T Teleholdings, Inc.*, No. 12-CV-40-BBC, 2013 WL 261265 (W.D. Wis. Jan. 10, 2013), because the parties had conducted significant discovery including: depositions of all six named plaintiffs; depositions of two individuals who consented to opt-in should a class be certified; and a Rule 30(b)(6) deposition. *Id*. at *14.

    Here, defendant rightly points out that plaintiffs have conducted *some* discovery of defendants and been provided a list of non-exempt employees. (Pls. Ex. 1 (dkt. #52-1).) Even so, there has been relatively limited discovery aimed at identifying the similarity of the putative collective members, including the fact that plaintiffs have taken no depositions to date, which weighs against applying an intermediate standard. That is especially true

when plaintiffs represent that they served their first set of discovery requests on defendants on October 3, 2023, but defendants did not respond while their motion for a stay was pending and only responded on June 10, 2024. (Ho Decl. (dkt. #52) ¶ 10; Pls. Ex. 2 (dkt. #52-2) 11.) Moreover, as the court noted in *Holmes*, holding plaintiffs to a higher standard at the conditional certification stage might require plaintiffs' counsel to contact potential plaintiffs, raising privilege and ethical concerns. Accordingly, the court will use its usual two-step process and require plaintiffs to make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Bitner*, 301 F.R.D. at 357. Regardless, the court hastens to note for reasons set forth below, both the factual allegations *and* discovery provided to date to the court appear to satisfy a "preponderance of the evidence" standard of review as well.

## II. Review

Enacted in 1938, the FLSA established basic wage and hour standards. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005) (citing 29 U.S.C. § 201 et seq.). A "core requirement" of the FLSA is that "employers must pay their employees a wage for all the 'work' that they do." *Spoerle*, 527 F. Supp. 2d at 862 (citing 29 U.S.C. §§ 206, 207). An employer who "suffer[s] or permit[s]" an employee to work in excess of 40 hours in a workweek is generally required to compensate that time "at a rate of not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. §§ 203(g), 207(a).

Here, plaintiffs allege that four of Arbor Green's common compensation policies violate the FLSA: (1) paying employees time and a half overtime at their morning shop rate while only paying time and a half at the higher jobsite rate for any *additional* hours

7

that the employee had worked over 40 at the jobsite; (2) not paying employees, after they had loaded trucks at the shop, for riding time from the shop to the first jobsite of the day; (3) not treating as hours worked time spent driving company trucks to overnight storage locations; and (4) not paying an overtime premium on annual bonuses. In response, defendants object that plaintiffs improperly rely on documents that Arbor Green produced during discovery (e.g., timecard lists, policies, bonus lists, and check stubs) because those documents are unauthenticated and inadmissible. (Dkt. #46, at 13-14.) Because defendants acknowledge that Arbor Green itself produced these obvious business records in question (*id.* at 14), the court will overrule their challenge to the authenticity of the documents, at least for the limited purpose of considering the certification of a conditional collective. *See Vulcan Golf, LLC v. Google Inc.*, 726 F. Supp. 2d 911, 915 (N.D. Ill. 2010) ("'the very act of production is implicit authentication'" (alterations adopted) (quoting *U.S. v. Brown*, 688 F.2d 1112, 1116 (7th Cir. 1982)). Indeed, while the court generally discourages attorneys from attempting to authenticate documents by averring that they were produced by a party in discovery alone, the court finds the challenged documents have a sufficient indicia of reliability to be admissible for current purposes in the case.[3] Of course, should defendants raise an as yet unarticulated, legitimate *and* specific basis to question the authenticity or admissibility of any of these documents at a later stage of this case, plaintiffs will bear the burden of demonstrating authenticity and admissibility.

---

[3] Defendants also point out that plaintiffs' counsel's initial declaration was unsigned, but counsel has since corrected that error. (Dkt. #52, at 2.)

Defendants also object that plaintiffs' proposed notice to "all hourly non-exempt employees who worked for Arbor Green . . ." (dkt. #38-1, at 1) is too broad because it would capture non-exempt employees who are *not* similarly situated to the named plaintiffs. (Dkt. #46, at 18.) For example, defendants point out that Arbor Green employs non-exempt shop mechanics, yard employees, and accounts receivable staffers who *only* work at Arbor Green facilities. (*Id.*) In response, plaintiffs propose addressing this objection by limiting the first three collectives to non-exempt *laborers*, while defining the bonus collective as all non-exempt Arbor Green employees who received a bonus. (Dkt. #53, at 2.) Accordingly, the court will limit the first three collectives to laborers, but allow the bonus collective to include *all* non-exempt, Arbor Green employees for the reasons explained below.

### A. Overtime Offset Collective

Under certain circumstances, 29 U.S.C. § 207(h)(2) allows an employer to use certain compensation already given to any employee as a credit against overtime liability owed to that employee under the Act. Specifically, § 207(h)(2) of the FLSA states that "[e]xtra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) [of 29 U.S.C. § 207] shall be creditable toward overtime compensation payable pursuant to this section." Relevant here, subsections (5) and (6) specifically allow credit for:

> (5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) or in excess of the employee's normal working hours or regular working hours, as the case may be;

> (6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days[.]

*Id.* § 207(5), (6).

In this case, plaintiffs claim that Arbor Green paid them, and other laborers, time and a half for shop work performed at the beginning of each day and during the first 40 hours of each week, but did not pay overtime for an equal number of hours worked beyond 40 hours.  In support, plaintiffs point to several policies and practices sufficient to meet their initial burden to certify a collective.  First, the named plaintiffs each alleged that trucks were "generally unloaded and loaded in the mornings," estimating that at least 95 percent of their paid yard time was worked in the morning and that the crew foreman would record the shop starting and finishing times.[4]  (Schmucker Decl. (dkt. #40) ¶ 5; Lulow Decl. (dkt. #41) ¶ 5; Holden Decl. (dkt. #42) ¶ 4.)  While defendants dispute the frequency of morning loading -- estimating that morning loading occurred no more than *60 percent* of the time (Joshua Wade Decl. (dkt. #48) ¶ 7) -- at this point, the court resolves all factual disputes in plaintiffs' favor.  *Bitner*, 301 F.R.D. at 357.  Moreover, defendants stated in their response to plaintiffs' interrogatories that, between July 2021 and July 2023, Arbor Green entered all shop hours "into the payroll system last," suggesting that as much as 60 percent of an employee's morning shop hours were improperly recorded as having

---

[4] Defendants assert that the named plaintiffs lack personal knowledge as to whether their respective foreman recorded the start and finishing times, but the named plaintiffs could have seen the foremen documenting their shop time or been told how this is tracked by a foreman, which would likely be admissible as a statement of a party opponent under Fed. R. Evid. 801(d)(2).

10

been worked at the end of the day. (Pls. Ex. 2 (dkt. #52-2) 6.) And, assuming that named plaintiffs worked the shop time in the morning, time records produced by Arbor Green suggest that their shop time hours were improperly credited against any overtime they worked at the jobsite on that day or week. (Pls. Exs. 3-5 (dkt. ##52-3, 52-4, 52-5); Dkt. #39, at 4-5.)

While defendants argue that plaintiffs only speculate yard work on their time sheet occurred in the morning, evidence that most of the named plaintiffs' shop time happened in the morning, and that Arbor Green improperly classified shop time as occurring later in the day, means plaintiffs have made more than a "modest factual showing" that they and other putative members of a collective were victims of Arbor Green's policy of improperly crediting lower paid time worked in the shop in calculating overtime owed them.

### B. Travel Time Collectives

Although the FLSA does not define "work" or specify what hours count as compensable work time, *see IBP, Inc.*, 546 U.S. at 25 (citing 29 U.S.C. § 201 *et seq.*), the Portal-to-Portal Act provides guidance as to what travel time is compensable, *see* 29 U.S.C. § 254. Under the Act, an employee's ordinary commute to and from the workplace is generally not compensable work time. 29 U.S.C. § 254(a); 29 C.F.R. § 785.35. However, travel time that is "all in the day's work" may be compensable. *See* 29 U.S.C. § 254(a); 29 C.F.R. § 785.38. Specifically, the regulations provide in relevant part that:

> Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and **must** be counted as hours worked regardless of contract, custom, or practice.

11

29 C.F.R. § 785.38 (emphasis added).

1. **Riding Time**

Based on the above, Arbor Green's policy of not paying for ride times from shop work to jobsite, and Schmucker's and Lulow's declarations that they were not compensated for these riding times, are sufficient to meet their burden at the conditional certification stage. Specifically, Arbor Green's policy states, "if you are simply riding along, you don't get paid at all." (Pls. Ex 8 (dkt. #52-8) 1.) Categorically excluding riders from earning pay is not fully consistent with applicable regulations that provide that when an employee reports to a place to pick up and carry tools, then travels to the place of work, or is required to return to his employer's premises, that travel time -- regardless of whether driving or not -- is compensable, particularly in those instances where an employee is expected to do shop work before being driven to a jobsite. *See* 29 C.F.R. § 785.38; *Morgan*, No. 19-CV-27-WMC, at *5 (policy of only compensating driver from driving from the shop to the jobsite was "not fully consistent" with § 785.38).

Further, Schmucker and Lulow aver that they regularly started their days at Arbor Green's shop between 2021 and 2024 where the foreman instructed them and other crew members to load certain materials, equipment and supplies onto trucks. (Schmucker Decl. (dkt. #40) ¶ 3; Lulow Decl. (dkt. #41) ¶ 3.) After loading the trucks, because Schmucker and Lulow typically did not drive from the shop to the first jobsite of the day, they further aver to not being paid for riding time consistent with Arbor Green's written policy. (Schmucker Decl. (dkt. #40) ¶ 6; Lulow Decl. (dkt. #41) ¶ 6.) In June 2023, Lulow and Schmucker also aver that they alternated as drivers and even worked the same number of

12

hours at the shop and jobsite, but the foreman credited the driver with more time for driving from the shop to the first jobsite. (Schmucker Decl. (dkt. #40) ¶ 9; Lulow Decl. (dkt. #41) ¶ 9.) Meanwhile, Holden was always assigned as a driver on his crew, during which Arbor Green paid him for driving from the shop to the first jobsite of the day. (Holden Decl. (dkt. #42) ¶¶ 2, 6.)

Defendants respond that plaintiffs have not shown that the morning shop work was more than *de minimis*. (Dkt. #46, at 24 (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) (where an activity "concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded")). At the conditional certification stage, however, the court does not adjudicate the merits of claims. *Bitner*, 301 F.R.D. at 357. In any event, as plaintiffs point out, Schmucker's and Lulow's time records show that they were regularly compensated for a half hour or more of "yard time" (also called shop time), which would strongly suggest that the shop work was not *de minimis*. *See Kellar v. Summit Seating Inc.*, 664 F.3d 169, 176 (7th Cir. 2011) (in considering whether work performed by an employee was *de minimis*, courts consider, among other factors, the amount of time spent on the extra work and the regularity with which the additional work is performed).

Defendants further assert that the actual experience of the named plaintiffs and potential opt-in plaintiffs varied depending on individualized factors like the practice of each foreman. As discussed above, however, Arbor Green's general *policy* of not paying riders from its shop to jobsites was *not* based on individualized factors, even if *some* may be excluded from collecting on certain days because their time was arguably *de minimis*. Even

13

taking defendants' assertion that the named plaintiffs sometimes unloaded and loaded their trucks in the morning for their own personal convenience (Joshua Wade Decl. (dkt. #48) ¶ 7), an employer does not have to *require* work for it to be compensable; the work need only be "suffered or permitted." *Morgan, LLC*, No. 19-CV-27-WMC, at *5 (citing 29 C.F.R. § 785.11). Thus, plaintiffs have met their burden, and the court will conditionally certify a collective action as to laborers' riding time (to and from the jobsite).[5]

### 2. Driving Time to Last Jobsite

Plaintiffs present evidence that Arbor Green foremen would tell drivers at the end of each workday where to store the truck overnight -- for example, in the company shop, a park and ride or some other location -- yet the foreman would not credit plaintiffs for driving from the jobsite to the overnight storage location. (*E.g.*, Schmucker Decl. (dkt. #40) ¶ 8.) Moreover, Arbor Green's policy stated that employees could choose between being paid at the shop rate ($12.00/hour) for driving to *and* from the job or being paid the higher "D.O.T." rate only on the way to the job. (Pls. Ex. 8 (dkt. #52-8) 1.) Those one-way pay policies would also appear to violate the FLSA, requiring employers to pay their employees for all their work. *See Spoerle*, 527 F. Supp. 2d at 862 ("employers must pay their employees a wage for all the 'work' that they do" (citing 29 U.S.C. §§ 206, 207)); *Brooklyn Sav. Bank v. O'Neill*, 324 U.S. 697, 707 (U.S. 1945) ("to allow waiver of statutory

---

[5] Plaintiffs offer virtually no argument or evidence about conditionally certifying a collective action as to Arbor Green not paying for riding time *from* the last jobsite of the day *back* to the shop. Nevertheless, the court will allow that claim to proceed since both parties include that claim in their proposed lawsuit notices (dkts. ##53-1, 54), and such a claim would appear to be consistent with regulatory law. *See* 29 C.F.R. § 785.38 ("If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finishes at 8 p.m. and is required to return to his employer's premises arriving at 9 p.m., all of the time is working time.").

wages by agreement would nullify the purposes of the Act."). Finally, defendants stated that they were unaware of employees receiving "separate compensation for time spent driving a company vehicle from the last job site to the storage location," (Pls. Ex 2 (dkt. #52-2) 5), which would appear inconsistent with 29 C.F.R. § 785.38 as well. Thus, plaintiffs have made a sufficient showing that plaintiffs and a putative collective together may well have had their rights violated by Arbor Green's common policy of not paying employees for driving vehicles to overnight storage locations.

### C. Bonus Collective

As also noted above, the FLSA generally requires employers to compensate employees "at a rate not less than one and one-half times the regular rate at which he is employed" for time worked in excess of 40 hours in a workweek. 29 U.S.C. § 207(a)(1). Subject to eight exclusions, an employee's regular rate "include[s] all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e). This "regular" rate *includes* bonuses, unless the bonus is "determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly." 29 U.S.C. § 207(e)(3). "Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay." 29 C.F.R. § 778.211(c).

As evidence that Arbor Green's year-end bonuses should have been included in the regular rate for each employee, plaintiffs point to Schmucker's declaration that, at its

Christmas parties between 2021 and 2023, the company consistently announced *all* employees who worked through the end of construction season would receive $1 per each hour worked and employees with commercial driver's licenses would receive an additional $.50 for each hour worked. (Schmucker Decl. (dkt. #40) ¶ 10.) Plaintiffs further argue that it is reasonable to infer Arbor Green regularly gave these Christmas bonuses to induce its employees to remain employed with the company until the end of the *following* construction season *and* to obtain and maintain their commercial driver's licenses. (Dkt. #39, at 19.)

In contrast, defendants assert that the bonuses were offered at the end of the year and were discretionary, such that they were properly excluded from plaintiffs' regular rate. (Dkt. #46, at 28-29.) At this stage, however, plaintiffs have met their burden, given (1) the reasonable inference that the bonuses were intended to encourage Arbor Green employees to stay employed through the end of the next season and to earn and maintain their commercial driver's licenses, *and* (2) Arbor Green's admitted practice *not* to consider those bonuses in fixing the employees' overtime pay. *See Bousquet v. Eagle Disposal, Inc.*, No. 23-CV-504, 2024 WL 323508, at *5 (E.D. Wis. Jan. 29, 2024) (allegation of a general practice of not including non-discretionary bonuses in employees' overtime pay rate plus plaintiff's own assertions regarding his pay rate was all that was required at the conditional certification stage). Accordingly, the court will also conditionally certify a collective action as to all non-exempt employees who received a bonus for working "through the end of the construction season" (Schmucker Decl. (dkt. #40) ¶ 10) *and* worked overtime.

**III. Period of Notice**

The parties dispute the applicable notice period and whether any opt-in plaintiffs would be entitled to equitable tolling, but it is premature for the court to decide those issues. First, the FLSA extends the statute of limitations from two years to three years for willful violations. 29 U.S.C. § 255(a). Defendants argue that the pertinent notice period is two years, while plaintiffs assert that it is premature to decide whether defendants' FLSA violations were willful, and the notice period should be three years. The court agrees with plaintiffs. Consistent with its practice, the court will define the collective action for purposes of providing notice to (1) laborers or (2) other non-exempt employees who worked overtime and received a year-end bonus for any of the three years before the date of this order. *E.g.*, *Bessy v. Per Mar Sec. & Rsch. Corp.*, No. 17-CV-034-WMC, 2018 WL 1583297, at *5 (W.D. Wis. Mar. 30, 2018). Of course, the individual opt-in plaintiff's claim will cover the two- or three-year period preceding his or her respective opt-in dates. *See* 29 U.S.C. § 256(b) (providing that commencement of action for opt-in plaintiffs is the "date on which such written consent is filed in the court in which the action was commenced").

As a separate matter, plaintiffs assert that extending the applicable notice period by seven months and seven days is appropriate because they are entitled to equitable tolling due to defendants allegedly delayed discovery responses. While the court previously allowed six days of equitable tolling for defendants' delayed response to plaintiffs' motion for conditional certification (dkt. #51), it agrees with defendants that further tolling the statute of limitations for potential opt-in plaintiffs is premature. *See Miller-Basinger v.*

17

*Magnolia Health Sys., Inc.*, No. 215CV00089WTLDKL, 2016 WL 773191, at *2 (S.D. Ind. Feb. 22, 2016) (finding it "premature for this Court to toll the statute of limitations for potential plaintiffs because doing so would require the Court to issue an advisory opinion, which would impermissibly address the rights of parties not before the Court" (alteration adopted and quotation marks omitted)); *Weil v. Metal Techs.*, Inc., No. 2:15-CV-00016, 2015 WL 5827594, at *2 (S.D. Ind. Oct. 6, 2015) (denying for the same reasons motion to equitably toll the statute of limitations for putative FLSA collective action members). Indeed, although plaintiffs assert that defendants did not respond to their pending discovery requests for months while defendants' motion to stay was pending with this court, plaintiffs never filed a motion to compel discovery, which would have bolstered their argument that defendants were dragging their feet in discovery.  Accordingly, the court will not equitably toll the statute of limitations right now, but it may reconsider this issue in the future.

**IV. Class Notice**

Finally, defendants ask the court to warn putative collective members that they may be liable for costs, but courts have generally not required a statement about potential costs in a FLSA notice, and defendants offer no compelling reason to do so here.  *Morgan*, No. 19-CV-27-WMC, at *7.

ORDER

IT IS ORDERED that:

1) Plaintiffs' motion for conditional certification of the FLSA collective action and authorization of notice to similarly situated persons (dkt. #38) is GRANTED.

2) Plaintiffs may send out the attached, modified notice.

Entered this 21st day of January, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge